# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FLOYD M. BROWN,
Petitioner,

       v.

EDWARD KLEM, *et al.*,
Respondents.

:
:
:
:
:
:
:
:
:

CIVIL ACTION

NO. 05-824

## Memorandum and Order

YOHN, J.                                                   February___, 2006

       Presently before the court is Petitioner Floyd M. Brown's *pro se* petition for a writ of

habeas corpus under 28 U.S.C. § 2254.  Petitioner is currently serving a life sentence at the State

Correctional Institution in Frackville, Pennsylvania, after he pled guilty to committing second

degree murder.   However, petitioner asserts that this guilty plea was improperly induced when

both his counsel and the trial judge erroneously informed him that he would be eligible for

parole.[1]   After conducting a *de novo* review of the Report and Recommendation of United States

Magistrate Judge Peter B. Scuderi, and upon careful consideration of the parties' submissions,

this court will approve and adopt the Report and Recommendation, and will dismiss petitioner's

petition as untimely .

### I. FACTUAL & PROCEDURAL BACKGROUND

_____

     [1]These statements regarding petitioner's eligibility for parole under Pennsylvania law
were technically incorrect because a defendant, who receives a life sentence, is not eligible for
parole unless the governor first grants a commutation. *See Commonwealth v. Trivigno*, 561 Pa.
232, 750 A.2d 243, 256 (Pa. 2000).

**A.  Petitioner's Guilty Plea**

On September 20, 1983, petitioner pled guilty to second degree murder for the shooting

death of Edward Lang, Sr., which occurred during the robbery of a bicycle shop in Philadelphia

on May 11, 1983.  Prior to entering his guilty plea at a hearing before the Honorable Edward S.

Malmed in the Pennsylvania Court of Common Pleas for Philadelphia County, petitioner

discussed his case, his possible sentence, and the possibility of parole with his trial counsel,

Warren Hamilton, Esquire.[2]  Hamilton informed petitioner that he had negotiated a "deal" with

the Commonwealth, in which the defense would forego a trial and the filing of a motion to

suppress, in exchange for a life sentence and petitioner's eligibility for parole after twelve or

thirteen years.[3]  *Commonwealth v. Brown*, June Term 1983 Nos. 904-09, slip op. at 1 (Phila. Ct.

Com. Pl. July 25, 2002).  The Commonwealth would also agree to drop other charges as part of

---

[2]These facts are based on the findings of the trial court that considered Brown's petition for postconviction relief under the Pennsylvania Post Conviction Relief Act ("PCRA").  While the PCRA court's decision to grant petitioner a new trial was eventually overruled by the Pennsylvania Superior Court, the superior court agreed with these findings of fact. *Commonwealth v. Brown*, No. 2673 EDA 2002, slip op. at 10 (Pa. Super. Ct. Dec. 19, 2003).

[3]In his petitions at the state and federal level, petitioner has insisted that his attorney told him that he would be not be eligible for parole for twelve to *fifteen* years.  However, no evidence in the record supports this conclusion. While the PCRA court stated in the discussion section of its opinion on the timeliness issue that petitioner credibly testified that he believed he would become eligible for parole after twelve to fifteen years, *Commonwealth v. Sims*, June Term 1983 Nos. 904-09, slip op. at 5, both the state PCRA court and the state superior court in their factual findings determined that his attorney represented that the approximate time period before parole would be twelve to thirteen years.  *See Sims*, June Term 1983 Nos. 904-09, slip op. at 1 & 3; *Commonwealth v. Sims*, 2673 EDA 2002, slip op. at 4 & 10.  Furthermore, while petitioner's testimony at the PCRA hearing was self-contradictory, (*see* PCRA Hr'g Tr. 9:6-16 & 25:5-18, Mar. 21, 2002), his own mother testified at the PCRA evidentiary hearing that the attorney represented that Brown would be eligible for parole in  "around eleven years." (*Id.* at 42:25-43:9.)  As such, the current assertion by petitioner that he was told by his attorney that he would not be eligible for parole for fifteen years is not supported on the record.

this deal.  *Id.*  Petitioner's mother was present when this discussion took place.  *Id.*

Shortly thereafter, petitioner appeared before Judge Malmed to enter his plea.  During the subsequent colloquy, the court advised petitioner of his rights and the mandatory life sentence required for guilty pleas to second degree murder. (Hr'g Tr. 22, Sept.  20, 1983.)  Petitioner stated he understood his rights, the factual basis for his plea, the sentence about to be imposed, and that he was pleading knowingly and voluntarily.  (*Id.* at 3-31.)   Petitioner also testified that the only promise he received for pleading guilty was that the Commonwealth would *nolle pros* all of the remaining charges.  (*Id.* at 18.)  Petitioner then formally pled guilty, but before he signed his plea agreement and was formally sentenced, (*Id.* at 31-32), Judge Malmed, on the record, made the following statements to his mother, who was also in the courtroom:

> COURT: Well, I want you to know this: a life sentence is required. I have no choice.
>
> MRS. BROWN: I understand.
>
> COURT: But under our system, he may apply for parole, if he has behaved himself, and the way it is operating today, as I understand it, they will entertain or receive petitions for parole in about twelve [12] years, and if he behaves himself, shows that he can come back and take his place in society, he may be paroled. What I am trying to tell you, it is not the end of the world.
>
> MRS. BROWN: Judge, your honor, I thank you for your mercy because I know that if it was me, I would probably feel an eye for an eye would be right, but he is my son and I love him, and I ask God to forgive him, and the people that he hurt, them to forgive him too, and I just thank you.
>
> COURT: Let's hope that at some future date he is paroled, but I don't want to hold out any false hopes for you. It will be at least 12 to 13 years. However, there is daylight. I want you to know that.

(*Id.* at 33-34.)  Neither defense counsel nor the prosecutor corrected the court.  The trial court then sentenced petitioner to life imprisonment.  (*Id.* at 35.)

After his sentencing, petitioner did not file a motion to withdraw his guilty plea, nor did he file a direct appeal. However, on or about February 15, 2000, approximately sixteen years after he was sentenced, Brown made his first inquiry regarding the possibility of parole. On March 7, 2000, the parole board informed Brown that it "had no jurisdiction" to grant parole because Brown was serving a life sentence for second-degree murder, and "at the present time, there is no early parole provision in the Parole Act." *Commonwealth v. Brown*, 2674 EDA 2002, slip op. at 5-6.

**B. Petition for Postconviction Relief**

Upon learning that he was ineligible for parole, petitioner filed a *pro se* petition on April 25, 2000 under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. §§ 9541-9546 (1988). In his PCRA petition, petitioner raised claims of ineffective assistance of counsel and the lack of a knowing, voluntary, and intelligent plea. The PCRA court appointed counsel, who filed an amended petition on October 29, 2001. After the PCRA court permitted appointed counsel to withdraw, and appointed new counsel to represent petitioner, it held an evidentiary hearing on March 21, 2002.

On July 25, 2002, the PCRA granted Brown's petition, vacated his guilty plea and sentence, and remanded for a new trial. Although the petition was facially untimely under Pennsylvania's one-year time bar for PCRA petitions,[4] the court found petitioner met two of the applicable exceptions to this rule: new evidence not otherwise discoverable by due diligence

---

[4]Under Pennsylvania law, Brown had until January 16, 1997 to file a timely first petition because his judgment of sentence became final prior to January 15, 1996, the effective date of the 1995 amendments to the PCRA. *See Commonwealth v. Alcorn*, 703 A.2d 1054, 1057 (Pa. Super. Ct. 1997).

4

(that petitioner was not eligible for parole) and governmental interference (Judge Malmed's erroneous statement regarding the availability of parole).[5] *Commonwealth v. Brown*, June Term1983 Nos. 904-09, slip op. at 5.  Turning to petitioner's substantive claims, the court also found that petitioner's guilty plea was substantially induced by the false advice he received about parole and was prejudiced by ineffective assistance of counsel.  *Id.* at 8.

The Commonwealth appealed to the Pennsylvania Superior Court, which reversed the PCRA court's decision in a non-precedential opinion on December 19, 2003.  *Commonwealth v. Brown*, 2673 EDA 2002, slip op. at 12.  In addressing the exceptions to the PCRA time-bar, the superior court ruled that petitioner could have ascertained, with due diligence, that he was actually ineligible for parole prior to March 2000.  *Id.* at 11.  While it found that Judge Malmed and his lawyer told petitioner that he may be eligible for parole in twelve to thirteen years, the court determined that petitioner failed to exercise reasonable diligence when he waited an additional three to four years before inquiring into his parole.  *Id.*  Thus, his PCRA was untimely under Pennsylvania law.

---

[5]Pennsylvania law provides an exception to the time-bar if the petitioner pleads and proves:
> (1) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
> (2) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
> (3) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S.A. § 9545(b)(1).  In this case, the PCRA court found the first two requirements to be met.

Petitioner then filed a petitioner for allowance of appeal with the Pennsylvania Supreme

Court, which was denied on April 20, 2004. *Commonwealth v. Brown*, 848 A.2d 927 (Pa.

2004).

**C. The Instant Habeas Petition**

Petitioner filed this instant petition on February 14, 2005.[6]  On May 10, 2005, this court

referred the case to Magistrate Judge Scuderi for a Report and Recommendation.  Respondents

filed their response to the petition on September 16, 2005, petitioner filed a reply to the response

on October 5, and the magistrate judge issued a Report and Recommendation on October 13,

2005.  On October 25, 2005, petitioner filed his objections to the Report and Recommendation.

**II. DISCUSSION**

In his habeas petition, petitioner asserts that he was provided ineffective assistance of

counsel when he was given erroneous information concerning his eligibility for parole, and

therefore his resulting guilty plea was rendered unknowing, unintelligent, and involuntary.   As

discussed below, this court finds that the statute of limitations under the Antiterrorism and

Effective Death Penalty Act of 1996 ("AEDPA") precludes petitioner's claims, which are not

subject to statutory or equitable tolling.

**A.  Jurisdiction and Standard of Review**

This court exercises jurisdiction over this habeas petition under 28 U.S.C. § 2254(a).

Where a habeas petition has been referred to a magistrate judge for a Report and

_____

[6]The original petition was signed and dated February 14, 2005, which the court will
accept as the date of filing under the prison mailbox rule in order to give petitioner the benefit of
every doubt. *Jones v. Morton*, 195 F.3d 153, 157-58 (3d Cir. 1999) ("a pro se prisoner's habeas
petition is deemed filed at the moment he delivers it to prison officials for mailing to the district
court").

Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), this court's review of "those portions of the report or specified proposed findings or recommendations to which objection is made" is *de novo*. 28 U.S.C. § 636(b). After conducting such a review, this court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." *Id.*

**B. AEDPA's Statute of Limitations**

Before the court will consider the merits of a petition for a writ of habeas corpus, the petition must be timely. Under AEDPA, a state prisoner seeking federal habeas relief must file his habeas petition within one year of the date on which his judgment of conviction became final. 28 U.S.C. § 2244(d)(1)(A). However, in cases in which the habeas petitioner's conviction becomes final prior to the statute's effective date of April 24, 1996, AEDPA has been construed as providing a one-year grace period, thus permitting the filing of a habeas petition any time before April 24, 1997. *Duncan v. Walker*, 533 U.S. 167, 183-84 (2001); *Burns v. Morton*, 134 F.3d 109, 111-12 (3d Cir. 1998).

In addition, AEDPA sets out several alternative start dates for the running of the one-year statutory period. First, if the state creates an impediment to filing an application "in violation of the Constitution or laws of the United States," and "the applicant was prevented from filing by such State action," the statute of limitations does not begin running until that impediment is removed. 28 U.S.C. § 2244(d)(1)(B). Furthermore, if the habeas petitioner's claim is based on newly discovered evidence, the petitioner has one year to file his claim from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). Moreover, regardless of the start date, the limitation period is subject to two tolling exceptions: (1)

statutory tolling, during the time a "properly filed" application for state postconviction review is

pending in state court, and (2) equitable tolling, a judicially-crafted exception.  28 U.S.C. §

2244(d)(2);  *Merritt v. Blaine*, 326 F.3d 157, 161 (3d Cir. 2003) (citing *Jones v. Morton*, 195

F.3d 153 (3d Cir. 1999)).

As petitioner's sentence became final on October 20, 1983,[7] prior to AEDPA's effective

date, petitioner's one-year grace period began running on April 24, 1996.  Accordingly,

petitioner's right to apply for federal habeas relief expired on April 24, 1997, unless petitioner

can show that an alternative start date applies, or this deadline is subject to statutory or equitable

tolling.

**1. Alternative Start Date**

Petitioner contends that the statute of limitations did not begin running on April 24,

1996, but on April 5, 2000, when he claims that the "state impediment" to his filing was

removed.  Alternatively, petitioner argues that the statute of limitations did not begin running

until March 7, 2000, when he discovered that he was not eligible for parole.  However,

petitioner's arguments do not establish that these alternative start dates should apply, and even if

they did, his habeas petition would still be untimely.

a. *State Created Impediment*

Under 28 U.S.C. § 2244(d)(1)(B), the statute of limitations begins to run on "the date on

which the impediment *to filing an application* created by State action in violation of the

Constitution or laws of the United States is removed, if the applicant was prevented from filing

---

[7]Petitioner's conviction became final on October 20, 1983 because, on that date, his time
expired to file a direct appeal to the Pennsylvania Superior Court.  42 Pa. Cons. Stat. §
9545(b)(3).

by such State action." (emphasis added).  Petitioner argues that the "requirements" set forth by

Judge Malmed at his hearing, specifically that petitioner "may be paroled" only "if he behaves

himself, [and] shows that he can come back and take his place in society," prevented petitioner

from filing an application for parole, and by extension prevented him from discovering his

ineligibility for parole.  Mem. in Support of Habeas Pet. 17.  Petitioner claims that he believed

he needed to complete several different prison programs in order to meet Judge Malmed's

requirements.  Therefore, he argues that the state impediment was not removed until April 5,

2000, when he completed these programs.

       However, the circumstances petitioner describes do not give rise to an impediment of the

type described in 28 U.S.C. § 2244(d)(1)(B).  Such an impediment might exist where a prison

offers inmates an inadequate law library or where a state court simply refuses to rule on a

constitutional issue properly before it. *See Whalem/Hunt v. Early*, 233 F.3d 1146, 1148 (9th Cir.

2000); *Lackawanna County District Attorney v. Coss*, 532 U.S. 394, 405 (2001).  Here,

petitioner fails to show how Judge Malmud's statements actually prevented or impeded

petitioner from discovering the law, inquiring into his eligibility for parole, or filing an

application for relief.  While petitioner might have been influenced by Judge Malmud's

statements, they in no way set up an insurmountable obstacle, such as an inadequate prison law

library, that prevented petitioner from determining the Pennsylvania law governing parole, or

"filing an application for relief."  Hence, petitioner is not subject to an alternative start date

under 28 U.S.C. § 2244(d)(1)(B).

       *b. Newly discovered evidence*

       I now turn to petitioner's argument that his habeas claim is based on newly discovered

evidence.  "The one-year period of limitation commences under 28 U.S.C. § 2244(d)(1)(D) when the factual predicate of a claim could have been discovered through the exercise of due diligence, not when it actually was discovered." *Schlueter v. Varner*, 384 F.3d 69, 74 (3d Cir. 2004) (citations omitted).  Whether a habeas petitioner has exercised due diligence is context-specific, and the essential question is "whether the petitioner should be expected to take actions which would lead him to the information." *Wilson*, 426 F.3d at 661-62 (3d Cir. 2005). While this standard does not require "the maximum feasible diligence," it does require reasonable diligence in the circumstances. *Schlueter*, 384 F.3d at 74.  A petitioner can only avail himself of a later accrual date "if vital facts could not have been known." *Id.*

Accordingly, in order for this alternative start date to apply, petitioner must demonstrate that March 7, 2000 was "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). Here, petitioner argues that his attorney's erroneous statements, reinforced by Judge Malmud's statements at trial, caused him to believe: (1) he would not be eligible for parole for twelve to fifteen years, and (2) before he could become eligible, he had to show he could "behave himself" and "come back and take his place in society."  Based on this erroneous advice, petitioner did not apply for parole until he had served more than fifteen years and completed several prison programs showing his fitness to return to society.

However, petitioner could have determined the facts vital to his claim (the Pennsylvania law on parole) many years prior to March 2000, and could have been expected to take steps that would have led him to this information.  First, petitioner did not inquire with the parole board after spending twelve to thirteen years in prison, the approximate period of time that both his

10

attorney and the judge indicated would pass before he was eligible for parole.  Rather, he waited

an additional three to four years before making any inquiries whatsoever.  Furthermore, even if I

found petitioner credibly believed he needed to improve his prison record due to Judge

Malmed's comments, Judge Malmed's comments were vague enough that petitioner reasonably

could have been expected to make further inquiries into the requirements for parole.  Thus, this

court agrees with Magistrate Judge Scuderi that petitioner could and should have discovered the

actual law regarding parole at least shortly after the twelve to thirteen-year period mentioned by

Judge Malmed.  If so, petitioner therefore had until October 1997 to file a timely federal petition

for a writ of habeas corpus.[8]  Petitioner's instant petition was filed on February 14, 2005, more

than seven years too late.[9]  Thus, unless this petition is subject to statutory or equitable tolling,

all his claims, whether subject to the alternative start date or not, are time-barred.

## 2. Statutory Tolling and Petitioner's Untimely PCRA Claims

Petitioner asserts his habeas claims are timely because his PCRA petition tolled the

statutory period.  AEDPA expressly tolls its one-year statute of limitations for the "time during

which a properly filed application for State post-conviction or other collateral review with

respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2).  A collateral

petition for state relief tolls the AEDPA statute of limitations only when the petition was

"submitted according to the state's procedural requirements, such as the rules governing time

---

[8]Thirteen years from the final date of petitioner's conviction, October 20, 1983, is October 20, 1996.  As AEDPA states that a petitioner has one year to file a claim from the date on which the factual predicate of the claim is discovered, petitioner had until October 20, 1997 to file his writ of habeas corpus.  *See* 28 U.S.C. § 2244(d)(1)(D).

[9]Indeed, petitioner should have discovered the factual predicate for the claim long before then, because nothing prevented him from learning the correct Pennsylvania law on commutation and parole shortly after his sentencing.

and place of filing." *Fahy v. Horn*, 240 F.3d 239, 243 (3d Cir. 2001) (internal citation omitted).

Specifically, state time limits on applications for postconviction relief are "condition[s] to

filing," such that untimely petitions are not "properly filed" under AEDPA. *Pace v.

DiGuglielmo*, 125 S. Ct. 1807, 1811-12 (2005) (stating "when a postconviction petition is

untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)").

Moreover, this court must defer to a Pennsylvania court's determination of whether a petition

was timely under state law. *Merritt v. Blaine*, 326 F.3d 157, 165-66 (3d Cir. 2003).

   Here, petitioner's PCRA petition was filed on April 25, 2000 and dismissed on April 20,

2004.  Because it was filed several years after the federal limitations period expired, the PCRA

petition cannot toll the statutory period.   Furthermore, even if I ruled the statute of limitations

began to run in March 2000, petitioner's habeas petition would still be time-barred, because the

PCRA petition was ruled as untimely under state law and cannot toll the federal limitations

period.[10]   As a result, petitioner's present habeas petition would still be almost four years too

late.[11]   As petitioner is not entitled to statutory tolling under AEDPA, he is time-barred unless

---

[10]Petitioner argues that the Pennsylvania Superior Court clearly erred in determining that
he did not act with reasonable diligence under state law, and that to defer to that interpretation
would violate his right to due process.  However, the timeliness of petitioner's PCRA petitions
are a matter of state law and it is well settled that this court cannot review a claim of state judicial
error.  *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (stating "federal habeas corpus relief
does not lie for errors of state law") (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)).  The
United States Supreme Court has emphasized that "a federal court is limited to deciding whether
a conviction violated the Constitution, laws, or treaties of the United States" and "that it is not
province of a federal habeas court to reexamine state-court determinations on state-law
questions."  *Id.* at 67-68.  Thus, because petitioner's PCRA claim was dismissed by the
Pennsylvania Superior Court on state law grounds, petitioner's claim that his PCRA petition was
timely is not cognizable.

[11]If the statute of limitations began running in March 2000, petitioner had until March
2001 to file his petition for a writ of habeas corpus.  However, petitioner did not file his habeas
petition until February 14, 2005, almost four years later.

equitable tolling applies.

### 3. Equitable Tolling

Lastly, petitioner argues that the court should equitably toll the statute of limitations.

The Third Circuit has held that the one-year filing deadline in 28 U.S.C. § 2244(d)(1) is subject to equitable tolling, but "only when the principle of equity would make the rigid application of a limitation period unfair.  The petitioner must show that he or she exercised reasonable diligence in investigating and bringing the claims." *Miller v. New Jersey State Department of Corrections*, 145 F.3d 616, 618-619 (3d Cir. 1998) (internal citations and alterations omitted).  Courts should be sparing in their use of equitable tolling, applying it "only in the rare situation where [it] is demanded by sound legal principles as well as the interests of justice." *LaCava v. Kyler*, 398 F.3d 271, 275 (3d Cir. 2005) (internal citations omitted).  A court may equitably toll the statute of limitations only when: (1) the defendant has actively misled the plaintiff; (2) the petitioner has timely asserted his rights but in a wrong forum; or (3) the petitioner has in some extraordinary way been prevented from asserting his rights. *Jones v. Morton*, 195 F.3d 153, 159 (3d Cir. 1999).

Magistrate Judge Scuderi concluded that petitioner's case is not the kind of case that would warrant equitable tolling.  I agree.  Petitioner has not demonstrated that the state misled petitioner as to the timing deadlines for postconviction relief or that he asserted his rights in the wrong forum.  Furthermore, petitioner has not shown that, in some extraordinary way, he has been prevented from asserting his rights.

Petitioner argues that equitable tolling should apply because it is "'undisputed' and virtually unanimous" that petitioner presents a meritorious claim for habeas relief, and as such,

"it would be severely unfair to not allow equitable tolling."  Memo in Support of Habeas

Petition 34.  According to petitioner, "that result would force Petitioner to spend the rest of his

life imprisoned with no hope of ever being able to make a legitimate challenge to his

illegitimate conviction and sentence due to questions of untimeliness that will inevitably arise."

*Id.*   However, in order to succeed on these claims, petitioner must have exercised reasonable

diligence in investigating and pursuing his claims.  I find that is not the case here.  While

petitioner should have discovered his claims at least prior to October 1997 (and more likely in

the 1980s), he waited years to apply for parole or to determine the specific requirements for

parole.   Had petitioner been reasonably diligent in determining the Pennsylvania law governing

parole or his own parole eligibility, he would not now be facing any statute of limitations

problem, state or federal.

Furthermore, even if this court were to rule petitioner exercised reasonable diligence

through the filing of his state PCRA petition in March 2000, petitioner still did not file his

federal habeas petition for five years after he discovered his claims.  Petitioner argues that he

was trapped by his obligation to pursue PCRA relief under federal law, and absent his obligation

to exhaust his state remedies, he could and would have very easily complied with all of

AEDPA's timing requirements.  However, a prisoner seeking postconviction relief might avoid

this predicament by filing a "protective" petition in federal court asking the federal court to stay

and abey the federal habeas proceedings until state remedies are exhausted.  *Rhines v. Weber*,

161 L. Ed. 2d 440, 452 (2005).  Petitioner filed no such petition here.

Finally, in addition to all these missed opportunities to vindicate his rights, petitioner

waited more than nine months after his allocatur petition in state court was denied before filing

14

his habeas petition with the federal courts.[12]   In such a case, "under long-established principles,

petitioner's lack of diligence precludes equity's operation." *Pace*, 125 S. Ct. 1807, 1815 (2005)

(citing *McQuiddy v. Ware*, 87 U.S. 14 (1874) ("Equity always refuses to interfere where there

has been gross laches in the prosecution of rights.")).  Thus, neither statutory nor equitable

tolling is warranted in this case, and petitioner's right to apply for federal habeas relief has

expired.

### III.  CONCLUSION

For the reasons explained above, I will overrule petitioner's objections, adopt the report

and recommendations of Magistrate Judge Scuderi, and dismiss as untimely the instant petition

for writ of habeas corpus.  An appropriate order follows.

---

[12]Petitioner claims that the delay was caused by the backlog of cases being handled by his jailhouse attorney.  However, in non-capital cases, even "attorney error, miscalculation, inadequate research or other mistakes have not been found to rise to the 'extraordinary' circumstances required for equitable tolling." *Fahy,* 240 F.3d at 244.  Likewise, this situation does not rise to the level of 'extraordinary' circumstances required under the case law.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|                                      |   |                |
|--------------------------------------|---|----------------|
| FLOYD M. BROWN,                      | : |                |
| Petitioner,                          | : | CIVIL ACTION   |
|                                      | : |                |
| v.                                   | : | NO. 05-824     |
|                                      | : |                |
| EDWARD KLEM, *et al.*,               | : |                |
| Respondents.                         | : |                |

## Order

And now, this _____ day of February 2006, upon careful consideration of petitioner

Floyd M. Brown's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254, the

response, petitioner's reply to the response, the Report and Recommendation of United States

Magistrate Judge Peter B. Scuderi, and petitioner's objections thereto, it is hereby ORDERED

that:

1.     Petitioner's objections are OVERRULED.

2.     The Report and Recommendation of United States Magistrate Judge Peter B.

       Scuderi is APPROVED and ADOPTED.

3.     The petition for writ of habeas corpus is DISMISSED as untimely.

4.     The petitioner having failed to make a substantial showing of the denial of a

       constitutional right, there is no ground to issue a certificate of appealability, *see*

       28 U.S.C. § 2253(c).

5.      The Clerk shall CLOSE this case statistically.

                                    _____s/William H. Yohn, Jr._____
                                       William H. Yohn, Jr., Judge