IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FLOYD M. BROWN,

        Petitioner,

v.

EDWARD KLEM, et al.,

        Respondents.

CIVIL ACTION
NO. 05-824

## OPINION

**Slomsky, J.**                                                                                                                                                                                             August 21, 2017

## I.    INTRODUCTION AND BACKGROUND

On September 20, 1983, Petitioner Floyd M. Brown pled guilty to second degree murder. Prior to the plea, he informed the Honorable Edwin S. Malmed, a Judge of the Court of Common Pleas of Philadelphia County, that he wished to enter a guilty plea to second degree murder for shooting Edward Lang Sr. during the May 11, 1983 robbery of a bicycle shop in Philadelphia. (Doc. No. 16 at 2.) Petitioner was sentenced to life imprisonment. (Id. at 1.)

Before accepting the guilty plea, the court advised Petitioner of his rights and the mandatory life sentence required to be imposed for a guilty plea to second degree murder. (Id. at 3.) Petitioner stated that he understood his rights, the factual basis for his plea, the sentence about to be imposed, and that he was pleading knowingly and voluntarily. (Id.) Before the guilty plea, Judge Malmed made the following statement on the record to Plaintiff's mother who was in the courtroom[1]:

---

[1] The statement regarding Petitioner's eligibility for parole under Pennsylvania law was incorrect because a defendant who receives a life sentence is not eligible for parole unless the governor first grants a commutation. Commonwealth v. Trivigno, 750 A.2d 243, 256 (Pa. 2000).

| COURT: | Well, I want you to know this: a life sentence is required. I have no choice. |
|---|---|
| MRS. BROWN: | I understand. |
| COURT: | But under our system, he may apply for parole, if he has behaved himself, and the way it is operating today, as I understand it, they will entertain or receive petitions for parole in about twelve [12] years, and if he behaves himself, shows that he can come back and take his place in society, he may be paroled. What I am trying to tell you, it is not the end of the world. |
| MRS. BROWN: | Judge, your honor, I thank you for your mercy because I know that if it was me, I would probably feel an eye for an eye would be right, but he is my son and I love him, and I ask God to forgive him, and the people that he hurt, them to forgive him too, and I just thank you. |
| COURT: | Let's hope that at some future date he is paroled, but I don't want to hold out any false hopes for you. It will be at least 12 to 13 years. However, there is daylight. I want you to know that. |

(Id.) Neither defense counsel nor the prosecutor corrected the court. The trial court then sentenced Petitioner to life imprisonment. (Id.)

After his sentencing, Petitioner did not file a motion to withdraw his guilty plea, nor did he file a direct appeal. Rather, on February 15, 2000, approximately sixteen years after he was sentenced, Petitioner inquired about the possibility of parole. (Id. at 4.) On March 7, 2000, he was informed that the parole board "had no jurisdiction" to grant parole because Petitioner was serving a life sentence for second degree murder, and "at the present time, there is no early parole provision in the Parole Act." (Id.)

On April 25, 2000, Petitioner filed a pro se petition under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. Ann. §§ 9541-9546. In the PCRA petition, Petitioner

2

raised claims of ineffective assistance of counsel and the lack of a knowing, voluntary, and intelligent plea. The PCRA court appointed counsel for Petitioner, who filed an amended petition on his behalf. (Doc. No. 16 at 4.) Thereafter, the PCRA court permitted appointed counsel to withdraw, and appointed new counsel to represent Petitioner. On March 21, 2002, the PCRA court held an evidentiary hearing. (Id.)

On July 25, 2002, the PCRA court granted the petition, vacated Petitioner's guilty plea and sentence, and remanded for a new trial. (Id.) Although the petition was untimely under Pennsylvania's one-year time bar for PCRA petitions,[2] the court found Petitioner met two of the applicable exceptions to this rule: new evidence not otherwise discoverable by due diligence (that he was not eligible for parole) and governmental interference (Judge Malmed's erroneous statement regarding the availability of parole). (Id. at 5.)

The Commonwealth appealed to the Pennsylvania Superior Court. On December 19, 2003, the Superior Court issued a non-precedential opinion in which it reversed the PCRA court's decision. (Doc. No. 14 at 4.) The Superior Court ruled that Petitioner could have ascertained, with due diligence, that he was ineligible for parole prior to March 2000. (Doc. No. 16 at 5.) While it found that Judge Malmed and his lawyer told Petitioner that he may be eligible for parole in twelve to thirteen years, the Superior Court determined that Petitioner failed to exercise reasonable diligence when he waited an additional three to four years before inquiring into his parole. (Id.) Thus, Petitioner's PCRA petition was untimely under Pennsylvania law.

---

[2] Under Pennsylvania law, Petitioner had until January 16, 1997 to file a timely petition because the judgment became final prior to January 15, 1996, the effective start day of the 1995 amendments to the PCRA. See Commonwealth v. Alcorn, 703 A.2d 1054, 1057 (Pa. Super. Ct. 1997).

3

On April 20, 2004, the Pennsylvania Supreme Court denied his petition for allowance of appeal. (Doc. No. 14 at 4.)

On February 14, 2005, Petitioner filed in this Court a pro se Petition for a Writ of Habeas Corpus pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254. (Doc. No. 1.) On May 10, 2005, the Petition was referred to the Honorable Magistrate Judge Peter B. Scuderi for a Report and Recommendation ("R&R"). (Doc. No. 3.) On October 13, 2005, Judge Scuderi issued an R&R recommending that Petitioner's claim for relief be denied and that a certificate of appealability not be issued. (Doc. No. 14.) Petitioner filed Objections to the R&R. (Doc. No. 15.) On February 1, 2006, the Honorable Judge William H. Yohn, Jr. denied Petitioner's Objections and adopted the R&R. (Doc. No. 16.)

More than a decade later, on June 1, 2017, Petitioner filed the present Motion for Relief from a Judgment, pursuant to Federal Rule of Civil Procedure 60(b), asking this Court to reconsider the Order, which adopted the R&R and denied the writ of habeas corpus. (Doc. No. 24.) On July 6, 2017, Respondents filed a Response in Opposition to Petitioner's Motion. (Doc. No. 27.) On August 9, 2017, Petitioner filed a Reply. (Doc. No. 30.) For reasons that follow, Petitioner's Rule 60(b) Motion will be denied.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 60(b) governs a party's ability to ask for relief from a judgment or order. It states:

> (b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order or proceeding for the following reasons:
>
> (1) mistake, inadvertence surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

4

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; OR

(6) Any other reason that justifies relief.

Fed. R. Civ. P. 60(b). Rule 60(b)(6) "vests power in courts adequate to enable them to vacate judgment whenever such action is appropriate to accomplish justice." Devon IT, Inc. v. IBM Corp., No. 10-2899, 2013 WL 6721748, at *3 (E.D. Pa. Dec. 20, 2013) (quoting Klapprott v. United States, 355 U.S. 601, 615 (1949) (internal quotation marks omitted)). "This provision applies only when there are reasons for relief other than those set out in the more specific clauses of Rule 60(b)." Id. A court should employ a "flexible, multifactor approach to Rule 60(b)(6) motions . . . that takes into account all the particulars of a movant's case." Cox v. Horn, 757 F.3d 113, 122 (3d Cir. 2014.) However, the court should utilize Rule 60(b)(6) sparingly and only in "extraordinary circumstances where, without such relief, an extreme and unexpected hardship would occur." Id.

### III. ANALYSIS

Pursuant to Federal Rule of Civil Procedure 60(b)(6), Petitioner requests that the Court reconsider the Order adopting the R&R and denying the Petition. (Doc. No. 24.) He argues that a change in Pennsylvania state law (Commonwealth v. Burton, 158 A.3d 618 (Pa. 2017)) and his newly raised mental health issues are "extraordinary circumstances" that excuse his lateness and entitle him to relief under Rule 60(b). (Doc. No. 24 at 13-14.) These arguments fail for the reasons explained below, and the Rule 60(b) Motion will be denied.

5

### A. Petitioner's Rule 60(b) Motion Is Untimely

A Rule 60(b) motion will generally be considered untimely if it is not filed within a year of the habeas judgment, unless there are "extraordinary circumstances" that excuse the party's failure to proceed sooner. Gordon v. Monoson, 239 F. App'x 710, 713 (3d Cir. 2007). Rule 60(b)(6) motions must be filed "within a reasonable time" from the entry of judgment. See Fed. R. Civ. P. 60(c)(1) ("A motion under Rule 60(b) must be made within a reasonable time – and for reasons (1), (2), and (3) no more than a year after the entry of the judgment, order, or the date of the proceeding."). The United States Court of Appeals for the Third Circuit has held that Rule 60(b)(6) "may not be used as a catchall to avoid the one-year limitation." Gambocz v. Ellmyer, 438 F.2d 915, 917 (3d Cir. 1971) (citing Fed. R. Civ. P. 60(c)(1)).

Petitioner's present Rule 60(b) Motion was not filed within a reasonable time. On February 1, 2006, the Honorable William H. Yohn, Jr. dismissed the Petition. (Doc. No. 16.) On March 5, 2007, the United States Supreme Court denied his petition for certiorari.

More than ten years later, on June 1, 2017, Petitioner filed the present Rule 60(b) Motion. (Doc. No. 24.) This ten-year delay in filing the Rule 60(b)(6) Motion is not "within a reasonable time" from the habeas judgment entered more than a decade ago. Gordon, 239 F. App'x at 713. Moreover, as explained below, there are no extraordinary circumstances to excuse Petitioner's untimeliness in filing this Motion.

### B. The Change in Law in Burton Is Not an Extraordinary Circumstance Justifying Petitioner's Untimeliness in Filing the Rule 60(b) Motion

Generally, a change in law is not grounds for Rule 60(b) relief. Morris v. Horn, 187 F.3d 333, 341 (3d Cir. 1999). The United States Supreme Court has stated that "intervening developments in the law by themselves rarely constitute extraordinary circumstances required for relief under Rule 60(b)(6)." Agostini v. Felton, 521 U.S. 203, 239 (1997). For example, in

6

Gonzalez v. Crosby, the Supreme Court denied a Rule 60(b) motion seeking to take advantage of a more permissive interpretation of a habeas deadline and explained that Rule 60(b) is not a mechanism for making rules retroactive. 545 U.S. 524, 536 (2005).

Here, Petitioner cites Cox v. Horn, 757 F.3d 113 (3d Cir. 2014) to explain that the Third Circuit has "not foreclosed the possibility that a change in controlling precedent, even standing alone, might give reason for 60(b) relief." (Doc. No. 24 at 7.) However, the Third Circuit in Cox examined only whether changes in controlling federal law could justify federal Rule 60(b) relief. 757 F.3d at 21. The Court of Appeals did not contemplate the possibility that a non-controlling change in state law, as raised here, could justify Rule 60(b) relief. The Third Circuit in Cox made clear that a change in federal law may justify Rule 60(b) relief if it is controlling as to the federal issue on which reconsideration is sought, but even then it may not lead to Rule 60(b) relief. (Id. at 24.)

Petitioner contends that the change in Pennsylvania state law made in Commonwealth v. Burton, 158 A.3d 618 (Pa. 2017) should warrant Rule 60(b) relief. (Doc. No. 24 at 8.) In his Reply, Petitioner contends that Burton illustrated the courts' struggle to properly define the meaning and application of the "newly discovered facts exception" in 42 Pa. Const. Stat. Ann. § 9545(b)(1)(ii). (Doc. No. 30 at 3.) Thus, a review of the Burton decision is necessary to evaluate Petitioner's claim. (Id.)

Burton is a state law case regarding the newly-discovered facts exception to the PCRA's one-year filing deadline. Burton, 158 A.3d at 618. The Third Circuit in Cox did not state that a non-controlling change in state law, like the state court decision in Burton, could alter federal habeas law and serve as a new ground for Rule 60(b) relief. (Doc. No. 27 at 6.) Habeas relief is available only for violations of the Constitution, laws or treaties of the United States. 28 U.S.C.

7

§ 2254(a). Consequently, Petitioner's contention that the change in state law in Burton provides grounds for Rule 60(b) relief on his federal habeas petition is unpersuasive.

### C. Petitioner's Mental Health Is Not an Extraordinary Circumstance Warranting Rule 60(b) Relief

Petitioner also contends that his purported mental health issues constitute an "extraordinary circumstance" for purposes of both Rule 60(b) relief and excusing the lateness of his filing. (Doc. No. 24 at 9-12.) Petitioner essentially argues that equitable tolling should apply here to delay the accrual of the statute of limitations. (Id. at 8-9.) The United States Supreme Court has made clear that a petitioner is entitled to "equitable tolling" only if he shows (1) that he has been pursuing his rights diligently and (2) that some extraordinary circumstance stood in his way and prevented timely filing. Holland v. Florida, 560 U.S. 630, 659 (2010). Under the standard adopted by the Third Circuit in the equitable tolling context, "mental incompetence is not a per se reason to toll a statute of limitations. Rather, the alleged mental incompetence must somehow have affected the Petitioner's ability to file a timely habeas petition." Nara v. Frank, 264 F.3d 310, 320 (3d Cir. 2001). "The burden is on the Petitioner to demonstrate with particularized description the causal relationship between the mental deficiency and failure to timely file the petition." Champney v. Secretary Pennsylvania Dept. of Corrs., 468 F. App'x 113, 118 (3d Cir. 2012).

Here, there is no evidence in the record that Petitioner's mental health affected his ability to file a timely habeas petition. Petitioner was able to file his PCRA petition, his habeas petition, and the present Rule 60(b) Motion. (See Doc. Nos. 1, 24.) Petitioner provides medical documentation to identify his mental health issues; however, he does not demonstrate how his mental health issues affected his ability to file a timely Rule 60(b) Motion. (See Doc. No. 24 at 30-46.) Petitioner offers no description of any causal link between his mental illness and his ten-

8

year delay in filing the Rule 60(b) Motion. In his Reply, Petitioner offers medial documentation from 2000 and 2011 to support his contention that he has suffered from mental health issues for a long period of time. (Doc. No. 30 at 15-22.) However, regardless of the condition he may have, Petitioner's mental health did not prevent him from submitting any of his other filings. He was able to present numerous filings to the Court during the period of time in which he is now claiming he was mentally unable to file such petitions and subsequent motions. Petitioner argues that he should have been afforded mental health equitable tolling for his Petition, but never raised any of these arguments when the Petition was filed. (See Doc. Nos. 1, 4, 13, 15, 24, 30.) Petitioner has failed to demonstrate that his mental illness was an actual impediment to the timely filing of the Petition.

Petitioner's mere assertion of mental illness does not explain his lateness in filing the present Rule 60(b) Motion, nor does it establish an "extraordinary circumstance" justifying reopening this case. See Perry v. Superintendent, SCI-Graterford, No. 06-1560, 2014 WL 6901851, at *13 (W.D. Pa. Dec. 5, 2014) (extraordinary circumstance justifying 60(b) relief not found where petitioner failed to establish how "life long history of mental illness" and "later declared mental incompetence" actually "prevented him from filing in a timely manner"); see also Champney v. Secretary Pennsylvania Dep't of Corrs., 468 F. App'x 113, 118 (3d Cir. 2012) (no equitable tolling where petitioner "participated in court proceedings over an extended period of time" and "did not suffer any new mental impairment or injury between . . . when he was able to act on his own behalf in state court, and . . . when a habeas petition could have been timely filed"); Przybyszewski v. Pennsylvania, No. 14-974, 2015 WL 2417494, at *3 (E.D. Pa. May 21, 2015) (no equitable tolling where petitioner did not explain failure to file for more than four years after medication restored mental competence).

Petitioner waited more than ten years after the dismissal of his federal habeas petition to file the instant Rule 60(b) Motion. Considerations of finality and repose, which become stronger with the passage of time from the date of the decision of the Court, militate against disturbing Petitioner's conviction entered over thirty-four years ago and the initial habeas proceeding which concluded over ten years ago. Perry, 2014 WL 6901851, at *13. Thus, there is no support for finding extraordinary circumstances justifying relief under Rule 60(b)(6).

## IV. CONCLUSION

For the aforementioned reasons, the Court will deny Petitioner's Motion (Doc. No. 16). An appropriate Order follows.